1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Kim-Anh Pham,                              No. 2:23-cv-00561-KJM-DB

12                    Plaintiff,                ORDER

13          v.

14   Lincoln Benefit Life Company,

15                    Defendant.

16

17          This case concerns the lapse and termination of life insurance policies.  Plaintiff Kim-Anh

18   Pham claims defendant Lincoln Benefit Life Company wrongfully terminated her husband's

19   policy and refused to pay the benefits owed to plaintiff when he passed away.  Defendant moves

20   to dismiss plaintiff's complaint for failure to state a claim.  For the reasons below, the court

21   **grants the motion.**

22   **I.     BACKGROUND**

23          In 2012, California "created certain protections to shield consumers from losing life

24   insurance coverage because of a missed premium payment."  *McHugh v. Protective Life Ins. Co.*,

25   12 Cal. 5th 213, 220 (2021).  Enacted in 2013, California Insurance Code sections 10113.71 and

26   10113.72 provide certain procedural protections for policy holders, including a requirement that

27   policy owners must be given the right to designate an additional person to receive a notice of

28   lapse or termination.  *Id.* at 240; *see* Cal. Ins. Code §§ 10113.71, 10113.72.  These statutes "create

                                              1

a single, unified pretermination notice scheme" outlining that no life insurance policy may lapse or terminate for nonpayment of a premium unless an insurer sends a notice of a missed premium payment to the policy owner and any designee at least 30 days before the effective date of termination. *McHugh*, 12 Cal. 5th at 240; *see* Cal. Ins. Code § 10113.72(c). Similarly, a notice of a lapse and termination for nonpayment of premium is not "effective unless mailed by the insurer to the named policy owner, a designee . . . , and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination." Cal. Ins. Code § 10113.71(b)(1). The statutes apply "to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." *McHugh*, 12 Cal. 5th at 220.

In November 2000, defendant issued a $500,000 life insurance policy to Thanh (Ted) Dang, plaintiff Kim-Anh Pham's husband. Compl. ¶¶ 22, 32, ECF No. 1. Plaintiff is the named beneficiary of the policy. *Id.* ¶¶ 22, 39. Under the terms of the policy, Mr. Dang could cancel the policy by sending a notice of cancellation. *Id.* ¶ 34. Mr. Dang did not send any cancellation notice and did not otherwise take steps to cancel the policy. *Id.* Twenty years later, in December 2020, defendant attempted to lapse Mr. Dang's policy for nonpayment of premium. *Id.* ¶ 35. But prior to terminating the policy, defendant did not provide Mr. Dang an opportunity to designate a third party to receive notice of a lapse or termination for nonpayment of a premium and did not provide Mr. Dang with a form to make such designation, in violation of the statutory requirements. *Id.* ¶ 37. Defendant also did not "provide lapse notice to all persons with an interest in the policy prior to lapsing the Policy." *Id.* Because defendant did not provide Mr. Dang an opportunity to designate a third party, it also failed to notify any third-party designee of the pending termination. *Id.* ¶ 38.

Mr. Dang passed away on October 2, 2022. *Id.* ¶ 36. Under the terms of the policy, defendant is obligated to pay death benefits when it "receive[s] due proof that the insured has

1  died.  Death must occur while [the] policy is in force." Policy at 6,[1] Laddon Decl. Mot. Ex. 1,

2  ECF No. 24-2; Surreply Ex. A, ECF No. 49-1.[2]  "Due proof of death" is specifically defined as:

3          (1) a certified original copy of the death certificate or (2) a certified
4          copy of a decree of a court of competent jurisdiction as to the finding
5          of death; or (3) a written statement by a medical doctor who attended
6          the deceased at the time of death; or (4) any other proof satisfactory
7          to the company.

8  *Id.* at 5.  The policy is "in force" when all the required premiums are paid "when due or within

9  the grace period." *Id.*

10        After Mr. Dang's death, on November 28, 2022, plaintiff's counsel sent a letter to

11  defendant, informing it that counsel represented plaintiff and that she is the beneficiary of the

12  policy "insuring the life of her diseased [sic] husband[.]"  *See* Pl.'s Letter.  In the letter, counsel

13  wrote that plaintiff "believes the policy was wrongfully lapsed in violation of several California

14  Insurance Code Provisions" and requested copies of specific documents, including the policy and

15  any notices of pending lapse and termination.  *Id.*  Defendant responded to the letter on

16  December 9, 2022.  Def.'s Letter, Surreply Ex. A.  In that letter, defendant wrote "[w]e are sorry

17  to learn of the loss and extend our sincere condolences to the family." *Id.*  Defendant then

18  provided plaintiff with the information and documents she had requested.  *Id.*  It also provided

19  contact information in case plaintiff's counsel had "any question or would like to discuss the

20  matter further[.]"  *Id.*  That was the last communication between plaintiff and defendant before

21  this lawsuit was filed  three months later on March 23, 2023.  *See* Compl.

22        In her complaint, plaintiff alleges she submitted a claim for benefits through her counsel,

23  Compl. ¶ 39, and defendant "refused to process the claim and refused to pay the death benefits

---

[1] The court cites to the page numbers on filings as provided by the parties, as opposed to the pagination automatically generated by the CM/ECF system.

[2] The court finds it can consider the Policy, the letter plaintiff's counsel submitted to defendant, Pl.'s Letter, Laddon Decl. Reply Ex. A, ECF No. 35-1, and defendant's response to plaintiff's attorney and accompanying documents, Surreply Ex. A, without converting the pending motion to a motion for summary judgement.  Both parties—defendant in reply, Reply at 6 n.2, ECF No. 35, and plaintiff during oral argument—agreed the documents are incorporated by reference in the complaint.  *See* Compl. ¶ 39; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1    payable on the Dang Policy," *id.* ¶ 40.  However, during oral argument, plaintiff conceded the

2    only correspondence she had with defendant prior to filing the complaint were the two letters now

3    before this court: plaintiff's initial letter to defendant and defendant's response.  Plaintiff also

4    alleges that despite defendant's knowledge of *McHugh* and its holding that the California statutes

5    apply to all policies, and despite having an affirmative duty to do so, defendant did not search for

6    and notify beneficiaries of potential claims.  *Id.* ¶¶ 43–44 (citing Cal. Ins. Code § 10509.944).

7         Plaintiff brings the following two claims individually and on behalf of a putative class:

8    1) breach of contract and 2) breach of the implied covenant of good faith and fair dealing.  *Id.*

9    ¶¶ 56–71.  Defendant moves to dismiss, Mot., ECF No. 24-1, plaintiff opposes, Opp'n, ECF No.

10   34, and defendant has replied, Reply.  The court held a hearing on this matter on August 11, 2023.

11   Mins. Mot. Hr'g, ECF No. 47.  Abigail Pershing and Christopher Pitoun appeared on behalf of

12   plaintiff.  *Id.*  Zoe Wilhelm and Katherine Villanueva appeared on behalf of defendant.  *Id.*  The

13   court submitted the matter, *id.*, subject to plaintiff's filing a surreply as allowed by the court,

14   Surreply, ECF No. 49.

15   **II.    LEGAL STANDARD**

16        A party may move to dismiss for "failure to state a claim upon which relief can be

17   granted."  Fed. R. Civ. P. 12(b)(6).  In response, the court begins by assuming the complaint's

18   factual allegations are true, but not its legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

19   (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  However, the court does

20   not need to "accept as true allegations that contradict matters properly subject to judicial notice or

21   by exhibit [or] allegations that are merely conclusory, unwarranted deductions of fact, or

22   unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.),

23   *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (citations omitted).  The court

24   then determines whether the factual allegations in the complaint "plausibly give rise to an

25   entitlement to relief" under Rule 8.  *Ashcroft*, 556 U.S. at 679.  This evaluation of plausibility is a

26   context-specific task drawing on "judicial experience and common sense."  *Id.*

4

1    **III.    DISCUSSION**

2          **A.      Breach of Contract**

3          "[T]he elements of a cause of action for breach of contract are (1) the existence of the

4    contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

5    (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811,

6    821 (2011).  The complaint here does not clearly identify what the alleged breach is.  Its

7    allegations suggest two different theories of breach.  First, defendant could have breached the

8    contract when it improperly lapsed the policy in violation of the applicable statutes.  *See* Compl.

9    ¶¶ 34–38, 42–44, 58–59.  In that scenario, defendant's failure to provide the statutorily required

10   notices breached the contract.  Second, defendant could have breached the contract when it

11   refused to pay death benefits.  *Id.* ¶¶ 39–41, 60.  Determining what the alleged breach is matters

12   because it affects what plaintiff must plead regarding her performance or excuse for not

13   performing, as well as the assessment of damages.  In her opposition, plaintiff clarifies the breach

14   in question is defendant's "refusal to pay death benefit proceeds"—not defendant's improper

15   termination of Mr. Dang's policy.  Opp'n at 5.  With this clarification, the court finds plaintiff has

16   not pled performance or excuse for nonperformance as required.

17          Construing plaintiff's claim of breach as based on defendant's refusal to pay death

18   benefits, *id.*; *see* Compl. ¶ 60, under the terms of the policy, defendant must pay death benefits

19   when it receives due proof of death, Policy at 6.  The death must occur while the policy is still in

20   force and the policy is in force when the required premiums are paid either when due or within

21   the grace period.  *Id.* at 5.  Thus, plaintiff must have submitted due proof of death and the

22   premiums must have been paid before defendant was obligated to pay death benefits.

23          Defendant argues plaintiff has not alleged she submitted proof of death.  Mot. at 1, 10.

24   During oral argument, plaintiff argued the letter she submitted was due proof of death because

25   defendant acknowledged Mr. Dang's death by expressing condolences to plaintiff.  *See* Surreply.

26   The policy's definition of due proof of death includes 1) "a certified original copy of the death

27   certificate," 2) "a certified copy of a decree of a court of competent jurisdiction as to the finding

28   of death," 3) "a written statement by a medical doctor who attended the deceased at the time of

5

1   death," or 4) "any other proof satisfactory to the company."  Policy at 5.  At the motion to dismiss

2   stage, the court draws all reasonable inferences in favor of plaintiff and so finds the letter could

3   be construed as due proof of death under the fourth definition, "any other proof."  Accordingly,

4   the court finds plaintiff has sufficiently alleged performance as to the due proof of death.

5          However, the court finds plaintiff has not alleged performance or excuse of

6   nonperformance as to the payment of premiums.  For approximately two years, as plaintiff

7   alleges, no one paid the premiums for the policy in question.  *See* Compl. ¶¶ 35–36.  Plaintiff

8   confirmed this concession during hearing.  Moreover, nowhere in the complaint or opposition

9   does plaintiff allege or explain why the nonpayment of premiums was excused, thereby triggering

10  defendant's obligation to pay death benefits.  Rather, in her opposition brief, plaintiff argues

11  payment of premiums is irrelevant because defendant did not comply with the applicable notice

12  statutes.  Opp'n at 3–4.  This might be so if the alleged breach was defendant's improper lapse of

13  the policies.  In California, "[t]ermination of coverage can only be accomplished by strict

14  compliance with the terms of any statutory provisions applicable to cancellation."  *Mackey v.*

15  *Bristol W. Ins. Servs. of Cal., Inc.*, 105 Cal. App. 4th 1247, 1258.  "If a cancellation is defective,

16  the policy remains in effect even if the premiums are not paid."  *Kotlar v. Hartford Fire Ins. Co.*,

17  83 Cal. App. 4th 1116, 1121 (2000).  But here, based on plaintiff's clarification, the alleged

18  breach is the nonpayment of death benefit, not the improper termination of the policy.  *See* Opp'n

19  at 5.  Thus, under plaintiff's theory of breach, the court has no basis for concluding plaintiff has

20  pled the obligation to pay premiums was excused.  *Cf. Siino v. Foresters Life Ins. & Annuity Co.*,

21  No. 20-02904, 2023 WL 4410948, at *8 (N.D. Cal. July 7, 2023) (ruling in favor of plaintiff and

22  declaring insurer did not validly terminate policy in question but holding plaintiff must tender

23  back premiums within reasonable time).  Because plaintiff has failed to allege excuse of

24  nonperformance, plaintiff has not stated a claim for breach of contract.

25          **B.      Breach of Implied Covenant of Good Faith and Fair Dealing**

26          In the insurance context, "there are at least two separate requirements to establish breach

27  of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the

28  reason for withholding benefits must have been unreasonable or without proper cause."  *Love v.*

1   *Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (Ct. App. 1990).  As explained above, plaintiff does

2   not allege excuse of nonperformance.  She provides no reason why she or her late husband did

3   not need to pay premiums.  Given that plaintiff has not alleged the nonpayment of premiums was

4   excused, she also has not pled defendant unreasonably withheld benefits.

5         Accordingly, plaintiff fails to state a claim for breach of implied covenant of good faith

6   and fair dealing.

7   **IV.**    **LEAVE TO AMEND**

8         The court finds plaintiff may be able to cure the deficiencies in her complaint by either

9   sufficiently alleging performance or excuse of nonperformance, or by alleging a different breach

10   of contract claim based on the same underlying facts.  *See Balistreri v. Pacifica Police Dep't*,

11   901 F.2d 696, 701 (9th Cir. 1988) ("[L]eave to amend should be granted if underlying facts

12   provide proper grounds for relief or if the complaint can be saved by amendment.").

13   **V.**    **CONCLUSION**

14         For the reasons above, the motion is **granted.**  Plaintiff's complaint is **dismissed without**

15   **prejudice but with leave to amend** if possible within the confines of Federal Rule of Civil

16   Procedure 11.  Any amended complaint shall be filed within **thirty (30) days** of the filing date of

17   this order.

18         This order resolves ECF No. 24.

19         IT IS SO ORDERED.

20   DATED:  October 25, 2023.

_____

CHIEF UNITED STATES DISTRICT JUDGE